UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASE NO:  PJM-22-0325

UNITED STATES OF AMERICA

v.

GOL LINHAS AÉREAS INTELIGENTES S.A.

Defendant.

_____/

## DEFERRED PROSECUTION AGREEMENT

Defendant GOL Linhas Aéreas Inteligentes S.A. (the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B, the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the United States Attorney's Office for the District of Maryland (the "Office") enter into this Deferred Prosecution Agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.      The Company acknowledges and agrees that the Fraud Section and the Office will file the attached one-count criminal information in the United States District Court for the District of Maryland (the "Information") charging the Company with one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is to violate: (1) the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Section 78dd-1; and (2) the books and records provision of the FCPA, as amended, Title 15, United States Code, Sections

1

78m(b)(2)(A), 78m(b)(5) and 78ff(a).  In so doing, the Company: (a) knowingly waives any right it may have to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Maryland; and (c) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement.  The Fraud Section and the Office agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the attached Statement of Facts, and that the allegations described in the Information and the facts described in the attached Statement of Facts are true and accurate.  The Company agrees that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing.  In addition, in connection therewith, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the

2

Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section

1B1.1(a) of the United States Sentencing Guidelines, or any other federal rule that the Statement

of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

## Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the

Agreement is fully executed, or the Information is filed with the Court, whichever comes later,

and ending three years from that date (the "Term").  The Company agrees, however, that, in the

event the Fraud Section and the Office determine, in their sole discretion, that the Company has

knowingly violated any provision of this Agreement or has failed to completely perform or fulfill

each of the Company's obligations under this Agreement, an extension or extensions of the Term

may be imposed by the Fraud Section and the Office, in their sole discretion, for up to a total

additional time period of one year, without prejudice to the Fraud Section's and the Office's right

to proceed as provided in Paragraphs 18 to 22 below.  Any extension of the Agreement extends

all terms of this Agreement, including the terms of the reporting obligations described in

Attachment D, for an equivalent period.  Conversely, in the event the Fraud Section and the

Office find, in their sole discretion, that there exists a change in circumstances sufficient to

eliminate the need for the reporting requirements in Attachment D, and that the other provisions

of this Agreement have been satisfied, the Agreement may be terminated early.

## Relevant Considerations

4.      The Fraud Section and the Office enter into this Agreement based on the individual

facts and circumstances presented by this case and by the Company, including:

a.      the Company did not receive voluntary disclosure credit pursuant to the

FCPA Corporate Enforcement Policy in the Department of Justice Manual ("JM") § 9-47.120, or

3

pursuant to U.S. Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 8C2.5(g)(1), because it did not voluntarily and timely self-disclose to the Fraud Section and the Office the conduct described in the Statement of Facts attached hereto as Attachment A;

    b.  the Company received full credit for cooperation under U.S.S.G. § 8C2.5(g)(2), because it cooperated with the Fraud Section's and Office's investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Company also received credit for its cooperation pursuant to the FCPA Corporate Enforcement Policy, JM § 9-47.120 by, including: (i) timely providing the facts obtained through the Company's internal investigation—which included reviewing voluminous documents, interviewing witnesses, conducting background checks, and testing over two thousand transactions—which allowed the government to preserve and obtain evidence as part of its own independent investigation; (ii) making several factual presentations to the Fraud Section and the Office to share findings; (iii) translating key documents as needed; (iv) identifying information previously unknown to the Fraud Section and the Office; (v) making the Company's current management and employees available to the Fraud Section and the Office, including several who traveled to the United States; and (vi) collecting, analyzing, and organizing voluminous evidence and information that it provided to the Fraud Section and the Office;

    c.  the Company provided to the Fraud Section and the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts;

    d.  the Company promptly engaged in remedial measures, including: (i) conducting a comprehensive risk assessment; (ii) redesigning its entire anti-corruption compliance program; (iii) forming a compliance department and hiring a new chief compliance officer to lead

4

it; (iv) re-evaluating and supplementing its anti-corruption policies and procedures, such as its relationship with third-party vendors and suppliers; and (v) terminating its relationships with third parties involved in the misconduct; in addition, the GOL Director[1] involved in the scheme resigned from his position and has had no role at the Company since;

      e.      the Company has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

      f.      the nature and seriousness of the offense conduct, as described in the Statement of Facts, including the involvement of a now former member of GOL's Board of Directors in a scheme to pay bribes to Brazilian government officials in exchange for assistance in passing two pieces of legislation;

      g.      the Company has some history of prior civil and regulatory actions, including tax and customs matters, but no prior criminal history;

      h.      the Company's agreement to resolve concurrently an investigation by the U.S. Securities and Exchange Commission ("SEC") relating to the conduct described in the Statement of Facts through a cease-and-desist proceeding, and agreeing to pay $24.5 million in disgorgement and prejudgment interest;

      i.      the Company's agreement to resolve concurrently an investigation with authorities in Brazil relating to the same conduct described in the Statement of Facts, which the Fraud Section and the Office are crediting in connection with the penalty in this Agreement;

---

[1] Defined *infra* at Attachment A.

j.      the Company has agreed to continue to cooperate with the Fraud Section and the Office in any ongoing investigation as described in Paragraph 5 below;  and

k.      the Company met its burden of establishing an inability to pay the criminal penalty sought by the Fraud Section and the Office, despite agreeing that the proposed amount was otherwise appropriate based on the law and the facts, and fully cooperated by providing information and documents, and access to appropriate Company personnel to respond to prosecutors' inquiries.   The Fraud Section and the Office, with the assistance of a forensic accounting expert, conducted an independent ability to pay analysis, considering a range of factors outlined in the Justice Department's Inability to Pay Guidance (*see* October 8, 2019 Memorandum from Assistant Attorney General Brian Benczkowski to All Criminal Division Personnel re: Evaluating a Business Organization's Inability to Pay a Criminal Fine or Criminal Monetary Penalty), including but not limited to: (i) the factors outlined in 18 U.S.C. § 3572 and the United States Sentencing Guidelines § 8C3.3(b); (ii) the Company's current financial condition; and (iii) the Company's alternative sources of capital.   Based on that independent analysis, the Fraud Section and the Office determined that paying a criminal penalty greater than $17,000,000 within 90 days of the beginning of the Term would substantially threaten the continued viability of the Company;

l.      accordingly, after considering (a) through (k) above, the Fraud Section and the Office have determined that a deferred prosecution agreement and a penalty of $17,000,000 is sufficient but not greater than necessary to achieve the purposes described in 18 U.S.C. § 3553.

m.      Based on the Company's remediation and the state of its compliance program, and the Company's agreement to report to the Fraud Section and the Office as set forth

6

in Attachment D to this Agreement (Corporate Compliance Reporting), the Fraud Section and the

Office determined that an independent compliance monitor was unnecessary.

### Future Cooperation and Disclosure Requirements

5.     The Company shall cooperate fully with the Fraud Section and the Office in any

and all matters relating to the conduct described in this Agreement and the attached Statement of

Facts and other conduct under investigation by the Fraud Section and the Office at any time

during the Term until the later of the date upon which all investigations and prosecutions arising

out of such conduct are concluded, or the end of the Term.  At the request of the Fraud Section

and the Office, the Company shall also cooperate fully with other domestic or foreign law

enforcement and regulatory authorities and agencies, as well as the Multilateral Development

Banks ("MDBs"), in any investigation of the Company or any of its subsidiaries or affiliates, or

any of its present or former officers, directors, employees, agents, and consultants, or any other

party, in any and all matters relating to the conduct described in this Agreement and the attached

Statement of Facts and other conduct under investigation by the Fraud Section and the Office.

The Company's cooperation pursuant to this Paragraph is subject to applicable law and

regulations, including data privacy and national security laws, as well as valid claims of attorney-

client privilege or attorney work product doctrine; however, the Company must provide to the

Fraud Section and the Office a log of any information or cooperation that is not provided based

on an assertion of law, regulation, or privilege, and the Company bears the burden of establishing

the validity of any such assertion.  The Company agrees that its cooperation pursuant to this

Paragraph shall include, but not be limited to, the following:

a.     The Company shall timely and truthfully disclose all factual information

with respect to its activities, those of its subsidiaries and affiliates, and those of its present and

former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Fraud Section and the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Fraud Section and the Office, upon request, any document, record, or other tangible evidence about which the Fraud Section and the Office may inquire of the Company.

b.      Upon request of the Fraud Section and the Office, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.      The Company shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.      With respect to any information, testimony, documents, records, or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental authorities, including United States authorities and those of a foreign government,

as well as the MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and the Office.

**Payment of Monetary Penalty**

7.      The Fraud Section and the Office and the Company agree that application of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

a.      The November 1, 2021 U.S.S.G. are applicable to this matter.

b.      Offense Level.  Based upon U.S.S.G. § 2C1.1, the total offense level is 40, calculated as follows:

| § 2C1.1(a)(2)  Base Offense Level | 12 |
|---|---|
| § 2C1.1(b)(1)  More than One Bribe | +2 |
| § 2C1.1(b)(3)  Elected Official | +4 |
| §§ 2C1.1(b)(2), 2B1.1(b)(1)(L) Value of Benefit Received (more than $25,000,000) | +22 |
| **TOTAL** | 40 |

c.      Base Fine.  Based upon U.S.S.G. § 8C2.4(a)(1), the base fine is $72,500,000.[2]

---

[2]      Because the conduct predates 2015, the 2014 Sentencing Guidelines have been used for the calculation of the base fine. *See* Guidelines Manual § 8C2.4(e)(l) (Nov. 2016).

Culpability Score. Based upon U.S.S.G. § 8C2.5, the culpability score is 8, calculated as follows

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(1)(A)(i) | The organization had 5,000 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +5 |
| (g)(2) | Cooperation, Acceptance | -2 |
| **TOTAL** | | 8 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $72,500,000 |
| Multipliers | 1.6 (min) / 3.2 (max) |
| Fine Range | $116,000,000 / $232,000,000 |

8.      The Fraud Section and the Office and the Company agree, based on the application of the Sentencing Guidelines, that the appropriate criminal penalty is $87,000,000. This reflects a 25 percent discount off the bottom of the applicable Sentencing Guidelines fine range.

9.      The Company has made representations to the Fraud Section and the Office, and provided supporting evidence, that the Company has an inability to pay an $87,000,000 criminal penalty. Based on those representations, and an independent analysis verifying the accuracy of those representations conducted by the Fraud Section and the Office (with the assistance of a forensic accounting expert), the parties agree that a criminal penalty of $17,000,000 ("Total Criminal Penalty") is appropriate.

10.     The Fraud Section, the Office and the Company agree that the Company will pay a monetary penalty to the United States Treasury of $7,650,000 within ten business days of the beginning of the Term, and an additional $7,650,000 within 90 days of the beginning of the Term.  The Fraud Section and the Office further agree that the Fraud Section and the Office will credit the amount the Company pays to the Controladoria-Geral da União (CGU) and the Advocacia-Geral de União (Attorney General Office) in Brazil, up to a maximum of $1,700,000. Due to the Company's inability to pay, the Company's payment obligations to the United States will be complete upon the Company's two payments totaling $15,300,000, so long as the Company pays the remaining amount of the Total Criminal Penalty to authorities in Brazil pursuant to their agreement. Should any amount of such payment to the authorities in Brazil not be made within twelve months of the beginning of the Term, or be returned to the Company or any affiliated entity for any reason, the remaining balance of the Total Criminal Penalty will be paid to the United States Treasury within twelve months of the beginning of the Term.  The Company and the Fraud Section and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 4 of this Agreement.  The Total Criminal Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud Section and the Office that the Total Criminal Penalty is the maximum penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Fraud Section and the Office agree that under those circumstances, they will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.  The Company acknowledges that no tax deduction may be sought in connection with

11

the payment of any part of the Total Criminal Penalty. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the Statement of Facts.

### Conditional Release from Liability

11.     Subject to Paragraphs 18 to 22, the Fraud Section and the Office agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company or any of its direct or indirect affiliates, subsidiaries or joint ventures relating to any of the conduct described in the attached Statement of Facts or the criminal Information filed pursuant to this Agreement. The Fraud Section and the Office, however, may use any information related to the conduct described in the attached Statement of Facts against the Company: or any of their subsidiaries or affiliates: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

a.     This Agreement does not provide any protection against prosecution for any future conduct by the Company or any of its affiliates or subsidiaries.

b.     In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or any of its affiliates or subsidiaries.

### Corporate Compliance Program

12.     The Company represents that it has implemented and will continue to implement a

12

compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, subsidiaries, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

13.     In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws.  Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

### Corporate Compliance Reporting

14.     The Company agrees that it will report to the Fraud Section and the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C.  These reports will be prepared in accordance with Attachment D.

15.     Thirty days prior to the expiration of the Term, the Company, by the Chief Executive Officer and Chief Compliance Officer, will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment F to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement.

## **Deferred Prosecution**

16.     In consideration of the undertakings agreed to by the Company herein, the Fraud Section and the Office agree that any prosecution of the Company for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company that is not set forth in the attached Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

17.     The Fraud Section and the Office further agree that if the Company fully complies with all of its obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within six months after the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the attached Statement of Facts.  If, however, the Fraud Section and the Office determine during this six-month period that the Company breached the Agreement during the Term, as described in Paragraph 18, the Fraud Section's and the Office's ability to extend the Term, as described in Paragraph 3, or to pursue other remedies, including those described in Paragraphs 18 to 22, remains in full effect.

14

**Breach of the Agreement**

18.     If, during the Term, the Company (a): commits any felony under U.S. federal law; (b): provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c): fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d): fails to implement a compliance program as set forth in Paragraphs 12 and 13 of this Agreement and Attachment C; (e): commits any acts that, had they occurred within the jurisdictional reach of the FCPA, would be a violation of the FCPA; or (f): otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Fraud Section and the Office become aware of such a breach after the Term is complete, the Company and its subsidiaries and affiliates, shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Fraud Section and the Office in the U.S. District Court for the District of Maryland or any other appropriate venue.  Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company or its subsidiaries or affiliates, shall be in the Fraud Section's and the Office's sole discretion.  Any such prosecution may be premised on information provided by the Company, its subsidiaries or affiliates, or the personnel of any of the foregoing.  Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company or its subsidiaries or affiliates, notwithstanding the expiration of the statute

15

of limitations, between the signing of this Agreement and the expiration of the Term plus one

year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with

respect to any such prosecution that is not time-barred on the date of the signing of this

Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the

statute of limitations as to any violation of federal law that occurs during the Term will be tolled

from the date upon which the violation occurs until the earlier of the date upon which the Fraud

Section and the Office are made aware of the violation or the duration of the Term plus five

years, and that this period shall be excluded from any calculation of time for purposes of the

application of the statute of limitations.

19.     In the event the Fraud Section and the Office determine that the Company has

breached this Agreement, the Fraud Section and the Office agree to provide the Company with

written notice of such breach prior to instituting any prosecution resulting from such breach.

Within thirty days of receipt of such notice, the Company shall have the opportunity to respond

to the Fraud Section and the Office in writing to explain the nature and circumstances of such

breach, as well as the actions the Company has taken to address and remediate the situation,

which explanation the Fraud Section and the Office shall consider in determining whether to

pursue prosecution of the Company or its subsidiaries or affiliates.

20.     In the event that the Fraud Section and the Office determine that the Company

has breached this Agreement: (a) all statements made by or on behalf of the Company or its

subsidiaries or affiliates to the Fraud Section and the Office or to the Court, including the

attached Statement of Facts, and any testimony given by the Company or its subsidiaries or

affiliates before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior

or subsequent to this Agreement, and any leads derived from such statements or testimony, shall

16

be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Company or its subsidiaries or affiliates; and (b) the Company or its subsidiaries or affiliates shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company or its subsidiaries or affiliates prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company or its subsidiaries or affiliates, will be imputed to the Company or its subsidiaries or affiliates for the purpose of determining whether the Company or its subsidiaries or affiliates have violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office.

21.     The Company acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

22.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company (the two most senior individuals at the Company), will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment E to this Agreement, that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the

Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

23.      Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations, that is material either to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the attached Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Fraud Section's and the Office's ability to determine a breach under this Agreement is applicable in full force to that entity. The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Company shall provide notice to the Fraud Section and the Office at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Fraud Section and the Office shall notify the Company prior to such transaction (or series of transactions) if they determine that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If at any time during the Term the Company engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Fraud Section and the Office may deem it a breach

of this Agreement pursuant to Paragraphs 18 to 22 of this Agreement. Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and the Office.

### Public Statements by Company

24.    The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 18 to 22 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the attached Statement of Facts will be imputed to the Company for the purpose of determining whether they have breached this Agreement shall be at the sole discretion of the Fraud Section and the Office. If the Fraud Section and the Office determine that a public statement by any such person contradicts in whole or in part a statement contained in the attached Statement of Facts, the Fraud Section and the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the attached Statement of Facts provided

that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

25.     The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Office and the Company; and (b) whether the Fraud Section and the Office have any objection to the release.

26.     The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Fraud Section and the Office are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

### Limitations on Binding Effect of Agreement

27.     This Agreement is binding on the Company and the Fraud Section and the Office, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Fraud Section and the Office will bring the cooperation of the

20

Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company. If the Court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

### Notice

28.     Any notice to the Fraud Section and the Office under this Agreement shall be given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, with copies by electronic mail, addressed to Chief, FCPA Unit, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue NW, Washington, DC 20005, and David I. Salem, Assistant United States Attorney, United States Attorney's Office for the District of Maryland, Southern Division, 6406 Ivy Lane Suite 800, Greenbelt, MD 20770. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Renata Fonseca, Av. Vinte de Janeiro s/no Ter de Passageiros no 01, Galeão 21941-570, Brazil, or by electronic mail to those individuals or to other counsel or individuals identified to the Fraud Section and the Office by the Company. Notice shall be effective upon actual receipt by the Fraud Section and the Office or the Company.

**Complete Agreement**

29.    This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Fraud Section and the Office.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Fraud Section and the Office, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR GOL Linhas Aéreas Inteligentes S.A.:**

Date: September, 9 2022

By: _____ .

GOL Linhas Aéreas Inteligentes S.A.
Celso Ferrer Monteira
Renata Domingues da Fonseca Guimeti

Date: September, 9 2022

Date: _____

By: _____

Loretta E. Lynch
Mark F. Mendelsohn
Paul, Weiss, Rifkind, Wharton & Garrison
LLP

23

**FOR THE DEPARTMENT OF JUSTICE:**

GLENN LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: 9/12/2022                    By: _____

Derek J. Ettinger
Assistant Chief
Joseph McFarlane
Trial Attorney

EREK L. BARRON
United States Attorney
District of Maryland

Date: 9/15/22                    By: _____

David I. Salem
Assistant United States Attorney

**CERTIFICATE OF COUNSEL FOR
GOL LINHAS AÉREAS INTELIGENTES S.A.**

I am counsel for GOL Linhas Aéreas Inteligentes S.A (the "Company") in the matter

covered by this Agreement.  In connection with such representation, I have examined relevant

Company documents and have discussed the terms of this Agreement with the Company Board

of Directors.  Based on our review of the foregoing materials and discussions, I am of the

opinion that the representative of the Company has been duly authorized to enter into this

Agreement on behalf of the Company and that this Agreement has been duly and validly

authorized, executed, and delivered on behalf of the Company and is a valid and binding

obligation of the Company.  Further, I have carefully reviewed the terms of this Agreement with

the Board of Directors and the General Counsel of the Company.  I have fully advised them of

the rights of the Company, of possible defenses, of the provisions of the Sentencing Guidelines

and of the consequences of entering into this Agreement.  To my knowledge, the decision of the

Company to enter into this Agreement, based on the authorization of the Board of Directors, is

an informed and voluntary one.

Date: 09/11/2022

By: _____
     Loretta E. Lynch
     Mark F. Mendelsohn
     Paul, Weiss, Rifkind, Wharton & Garrison LLP
     Counsel to GOL Linhas Aéreas Inteligentes S.A.

## COMPANY OFFICER'S CERTIFICATE FOR
## GOL LINHAS AÉREAS INTELIGENTES S.A.

I have read this Agreement and carefully reviewed every part of it with outside counsel for GOL Linhas Aéreas Inteligentes S.A. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the provisions of the Sentencing Guidelines, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the provisions of the Sentencing Guidelines, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the General Counsel for and that I have been duly authorized by the Company to act on behalf of the Company in relation to this matter, and to execute this Agreement on behalf of the Company.

Date: September 09th 2022

GOL Linhas Aéreas Inteligentes S.A.

By:  _____

General Counsel, GOL Linhas Aéreas Inteligentes S.A.
Renata Domingues da Fonseca Guimeh